# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALAN L. SHIELDS,<br><br>      Plaintiff,<br><br>v.<br><br>SGT. LAMB, LT. LIVINGSTON, C/O CRAWFORD, LT. KELLER, SGT. TANNER, C/O HUNDLEY, C/O KIRTLEY, MS. CUMMINGHAM, and WARDEN JEREMIAH BROWN,<br><br>      Defendants. | Case No. 3:25-cv-01612-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Alan Shields, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Shields alleges that Defendants used excessive force, failed to protect him, and were deliberately indifferent to his mental and physical conditions.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 7) and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between the IDOC, the medical providers, and the Court.

Page **1** of **9**

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

On November 14, 2023, Shields asked Sergeant ("Sgt.") for a crisis team, but Lamb refused Shields's request. (Doc. 1, p. 15). In response, Shields set his cell on fire. *Id*. Lamb transported Shields to restrictive housing instead of placing Shields in a crisis cell. *Id*. The following day, November 15, 2023, Shields was on crisis watch in restrictive housing, although he maintains that his cell was not a designated crisis watch cell. *Id*. Sometime between 1:00 p.m. and 1:30 p.m., Lieutenant ("Lt.") Livingston, Lt. Keller, Sgt. Tanner, C/O Crawford, and C/O Hundley entered his cell. *Id*. Hundley and Tanner forced Shields out of his wheelchair onto the ground and Keller and Livingston held him down on the floor. *Id*. Livingston sprayed Shields with mace multiple times and Crawford punched him in the ribs, back, and side of the head. *Id*. at p. 15-16. Livingston also punched him multiple times. *Id*. at p. 16. Hundley held Shields down by placing his forearm on Shield's neck. *Id*. Meanwhile, Tanner forced his finger into Shield's anus. *Id*. Shields later spoke with medical staff, mental health, and internal affairs. (Doc. 1, p. 16). Shields received a rape kit at an outside hospital. *Id*.

On April 1, 2024, Shields was out of his crisis cell for dayroom time. (Doc. 1, p. 15). Correctional Officer Kirtley let inmate Charles Hall out of his cell without restraints and allowed Hall to walk around the dayroom. *Id*. Shields alleges that at some point he was kicked in the side of his face and lost a tooth. *Id*.

Shields notes that he is also in a wheelchair, but on September 18, 2024, mental health staff took his wheelchair. (Doc. 1, p. 16). Shields was forced to crawl on the floor. He notes that feces and urine seeps into the cell from other inmate's cells, and he was forced to crawl on the dirty floor. *Id*. Shields alleges that he was told that Ms. Cummingham and Warden Brown said to keep crawling on the floor. He alleges that C/O Crawford, Lt. Atterberry, and Lt. Young confiscated his wheelchair. *Id.* A doctor informed Shields that he must follow the rules and directed him to file a grievance. *Id*.

### PRELIMINARY DISMISSALS

Although Shields alleges that on November 14, 2023, he asked Sgt. Lamb for a crisis team and Lamb refused his request, Shields fails to offer sufficient factual allegations to state a violation of his constitutional rights. A successful complaint generally alleges "the who, what, when, where, and how . . . ." *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Shields fails to indicate his need for a crisis team on November 14, 2023, or his mental state. He notes that he set his cell on fire but fails to provide any additional factual allegations regarding his mental state prior to that event or Lamb's knowledge of his mental state at the time. He also alleges that Lamb placed him in a restrictive housing cell as opposed to a crisis watch cell, but he fails to allege how this conduct amounted to deliberate indifference or violated Shields's constitutional rights. Thus, Shields's claim against Sgt. Lamb is **DISMISSED without prejudice**.

Shields also alleges that Lt. Atterberry and Lt. Young confiscated his wheelchair in September 2024, but Shields fails to identify either officer as a defendant in the case caption. *See* FED. R. CIV. PROC. 10(a); *Myles v. United States*, 416 F.3d 551, 551–552 (7th Cir.

2005). To be a party in the case, a plaintiff must identify them in the case caption. *See Myles*, 416 F.3d at 551-552. Because Shields fails to include these officers as defendants, any potential claim against Atterberry and Young is **DISMISSED without prejudice**.

### DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** Eighth Amendment excessive force claim against Lt. Livingston, Lt. Keller, Sgt. Tanner, C/O Crawford, and C/O Hundley for physically and sexually assaulting Shields on November 15, 2023.
>
> **Count 2:** Eighth Amendment failure to protect claim against C/O Kirtley for releasing inmate Charles Hall from his cell while Shields was in the dayroom.
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Ms. Cummingham, Warden Brown, and C/O Crawford for confiscating Shields's wheelchair and forcing him to crawl on his cell floor.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Count 1**

---

[2]   *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

At this stage, Shields states a viable excessive force claim against Lt. Livingston, Lt. Keller, Sgt. Tanner, C/O Crawford, and C/O Hundley. *See, e.g.*, *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (stating that "requirement for [an excessive force claim] is that [the officer] used force not 'in a good-faith effort to maintain or restore discipline,' but 'maliciously and sadistically to cause harm.'"). Thus, Count 1 shall proceed against Lt. Livingston, Lt. Keller, Sgt. Tanner, C/O Crawford, and C/O Hundley.

**Count 2**

Shields fails to state a claim against C/O Kirtley for his release of inmate Charles Hall on April 1, 2024. (Doc. 1, p. 16). Shields alleges that Kirtley released Hall from his cell without restraints and allowed Hall to walk around the dayroom. As a result, Shields alleges that Hall kicked him in the head. To state a viable failure to protect claim, a plaintiff must show that prison officials were aware of a specific, impending, and substantial threat to their safety, often by showing "that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). But there is no indication that Kirtley was aware of a threat to Shields's safety by the release of Hall, nor are there any allegations to suggest that Kirtley acted with deliberate indifference. At most, Shields allegations suggest only that Kirtley was negligent in failing to properly cuff Hall. Thus, he fails to state a claim.

The Court further notes that this claim appears to be unrelated to Shields's claim of excessive force by the officers in November 2023. Federal Rule of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. In other words, multiple defendants may not be joined

in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *See* FED. R. CIV. PROC. 18, 20(a)(2); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The allegations in the Complaint do not suggest that Kirtly participated in the November 15, 2023 incident, and Shields's allegations against Kirtly are separate from and unrelated to the claim in Count 1. Thus, if Shields wishes to proceed with this claim, he would need to file a new lawsuit.

**Count 3**

Shields also fails to state a claim in Count 3. Although he alleges that his wheelchair was confiscated by mental health, he also alleges that Crawford and two other officers took the wheelchair. He also alleges that he was told that ADA Coordinator Cummingham and Warden Brown said he could keep crawling in his cell, but he fails to allege who made these statements to him. His allegations are threadbare and fail to adequately allege that any defendant acted with deliberate indifference. Further, these allegations, which occurred in September 2024, are unrelated to the November 2023 excessive force claim in Count 1. To pursue his claim against officials for confiscating his wheelchair and/or leaving him in a filthy cell, he would need to file a new lawsuit. Thus, Shields's claim in Count 3 is **DISMISSED without prejudice**.

## DISPOSITION

For the reasons stated above, Count 1 shall proceed against Lt. Livingston, Lt. Keller, Sgt. Tanner, C/O Crawford, and C/O Hundley. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Lt. Livingston, Lt. Keller, Sgt. Tanner, C/O Crawford, and C/O Hundley: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Shields. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Shields, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Shields, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs,

regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Shields is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 27, 2025.**

Digitally signed by Judge Sison
Date: 2025.10.27 13:35:09 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**